1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM MIDDLEBROOK,

11            Plaintiff,                    No. CIV S-07-1663 DAD

12        v.

13   MICHAEL J. ASTRUE,                     <u>ORDER</u>
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19   Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for

20   further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22            On July 23, 2004, plaintiff applied for Supplemental Security Income (SSI) under

23   Title XVI of the Social Security Act (Act), alleging disability due to dyslexia, color blindness,

24   and partial blindness.[1]  (Transcript (Tr.) at 88-91, 101.)  The application was denied initially on

25   _____

26        [1] A previous application was denied in September 2002.  (Tr. at 154.)

December 17, 2004, and upon reconsideration on January 14, 2005. (Tr. at 34-45.) Pursuant to plaintiff's timely request, a hearing was held before an administrative law judge (ALJ) on January 26, 2006. (Tr. at 220-59.) Although plaintiff did not appear at the hearing, a non-attorney representative appeared on his behalf, and a vocational expert testified. (Tr. at 220-22.) A second hearing was held before the ALJ on July 19, 2006. (Tr. at 260-91.) Plaintiff appeared at that hearing, along with his non-attorney representative, and testified. (Tr. at 260-61.) A vocational expert who was present at the second hearing did not testify. (Id.) In a decision issued on November 16, 2006, the ALJ determined that plaintiff was not disabled at any time through the date of the decision. (Tr. at 17-23.) The ALJ entered the following findings:

1. The claimant did not engage in substantial gainful activity after June 23, 2004.

2. The medical evidence establishes that the claimant has limited visual acuity related to nystagmus, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix I, Subpart P, Regulations No. 4.

3. The claimant's subjective complaints are not fully credible and not supported by the evidence of record.

4. The claimant had the residual functional capacity to perform work except for work involving more than occasionally climbing stairs. He can not climb ropes, ladders, and scaffolding. He cannot work around open flames, unprotected heights, or dangerous machinery. The claimant can not drive or work in dim light, and can occasionally read and write. He cannot perform tasks requiring fine visual acuity (such as threading a needle) or the need to identify colors.

5. The claimant is 22 years old, and does not have past relevant work. The claimant has a 12th grade education (20 CFR 416.965).

6. The framework of Medical-Vocational Rule 204.00, and the testimony of the vocational expert, and Appendix 1, Subpart P, Regulations No. 4, directs that the claimant is not disabled, as there are a significant number of jobs that he can perform. Examples of these jobs are laundry laborer, agricultural packer, and light packager.

/////

2

1    7.    The claimant was not under a "disability" as defined in the
          Social Security Act, at any time on through [sic] the date of
2         this decision.

3    (Tr. at 22.)

4    On June 22, 2007, the Appeals Council denied plaintiff's request for review of the

5    ALJ's decision.  (Tr. at 5-13.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by

6    filing the complaint in this action on August 14, 2007.

7                                    **LEGAL STANDARD**

8    The Commissioner's decision that a claimant is not disabled will be upheld if the

9    findings of fact are supported by substantial evidence and the proper legal standards were

10   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

11   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

12   the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller

13   v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

14   a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

15   Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

16   401 (1971)).

17   A reviewing court must consider the record as a whole, weighing both the

18   evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

19   F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

20   of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21   substantial evidence supports the administrative findings, or if there is conflicting evidence

22   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25   1335, 1338 (9th Cir. 1988).

26   /////

1    In determining whether or not a claimant is disabled, the ALJ should apply the

2  five-step sequential evaluation process established under the Social Security regulations.  Title 20

3  of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

4  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process has been

5  summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.
>
> Step two: Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three: Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App. 1?  If so, the claimant is conclusively
> presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If
> so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity
> to perform any other work?  If so, the claimant is not disabled.  If
> not, the claimant is disabled.

16  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

17    The claimant bears the burden of proof in the first four steps of the sequential

18  evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

19  sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

20  (9th Cir. 1999).

21                                    **APPLICATION**

22    Plaintiff seeks reversal of the Commissioner's decision and remand for further

23  proceedings.  In support of his motion for summary judgment, plaintiff argues that (1) the ALJ

24  should have obtained the opinion of a medical expert regarding the functional consequences of

25  plaintiff's vision impairment, (2) the ALJ's analysis at step three is flawed, (3) the ALJ should

26  have credited plaintiff's subjective symptom allegations, (4) the ALJ should have found a severe

4

1  mental impairment, and (5) the ALJ should have taken the testimony of a vocational expert at the

2  second hearing and posed hypothetical questions based on plaintiff's testimony.  The court finds

3  plaintiff's argument with respect to severe impairments dispositive and therefore addresses only

4  that argument below.

5          Plaintiff asserts that reversal is required because the ALJ failed to find that he

6  suffered from any severe mental impairment at step two of the sequential evaluation process

7  "when listing-level cognitive problems were present."  (Pl.'s Mot. for Summ. J. at 7.)  In this

8  regard, plaintiff contends that his performance IQ of 70, visual memory index score of 74, and

9  digit symbol subscale score of 3 warranted the finding of a severe mental impairment.  (Id. at 15.)

10  He argues that a digit symbol subscale score of 3 suggests organic brain damage, although he

11  concedes that the psychologist who administered the Wechsler Adult Intelligence Scale - III test

12  ascribed the score to plaintiff's visual impairments.  (Id. at 2 n.3 & 9.)  Plaintiff also argues that

13  his performance IQ of 70 is consistent with mild mental retardation.  (Id. at 9, 12.)

14          At step two of the sequential evaluation process, the ALJ must determine if the

15  claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater,

16  80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  Under the

17  Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it

18  does not significantly limit [the claimant's] physical or mental ability to do basic work

19  activities."[2]  20 C.F.R. § 416.921(a).  The severity regulation serves to "identify[] at an early

20  stage those claimants whose medical impairments are so slight that it is unlikely they would be

21  found to be disabled even if their age, education, and experience were taken into account."

22  Yuckert, 482 U.S. at 153.  "Step two, then, is 'a de minimis screening device [used] to dispose of

23

24          [2]  Basic work activities encompass "the abilities and aptitudes necessary to do most jobs,"
including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2)
capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and
25  remembering simple instructions, (4) use of judgment, (5) responding appropriately to
supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine
26  work setting.  20 C.F.R. § 416.921(b).

1   groundless claims[.]'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (quoting <u>Smolen</u>, 80

2   F.3d at 1290). <u>See</u> <u>also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158-59 (9th Cir. 2001). "An

3   impairment or combination of impairments may be found 'not severe *only if* the evidence

4   establishes a slight abnormality that has no more than a minimal effect on an individual's ability

5   to work.'" <u>Webb</u>, 433 F.3d at 686 (quoting <u>Smolen</u>, 80 F.3d at 1290, and adding emphasis).

6          Here, the ALJ found that "the record reflects a history of nystagmus,[3] resulting in

7   limited vision and some difficulty identifying color." (Tr. at 18.)  The ALJ determined that

8   plaintiff's vision impairments had significantly limited his ability to perform basic work-related

9   activities on and after his alleged onset date, thereby establishing that plaintiff's vision

10   impairments were severe at step two of the sequential evaluation process.  Turning next to

11   plaintiff's allegation of psychiatric symptoms, the ALJ noted that the record did not show that

12   plaintiff was undergoing any type of mental health treatment when he applied for SSI in 2004.  In

13   the absence of any mental health treatment records or any opinion by a treating mental health

14   professional, the state agency obtained a comprehensive psychological evaluation by a

15   psychologist. (Tr. at 18-19.)

16          On October 28, 2004, Joanna T. Koulianos, Ph.D., a licensed psychologist,

17   assessed plaintiff and prepared a report. (Tr. at 183-88)  The ALJ summarized the contents of the

18   report as follows:

19        The claimant alleged a history of attention deficit disorder and drug
20        abuse, however, he also reported that he has no current symptoms,
          and in fact, has had no treatment or taken medication since he was
21        16 years old.  The claimant admitted that he lives with his
          girlfriend, and can cook, sweep, wash clothes, care for his personal
22        needs, handle his own finances, and take public transportation.
          Moreover, he stated that he is currently working part time at a fast
23        food restaurant preparing food.  He also indicated that he has
          participated in many survival trips in the wilderness, and would
24        like to become survival guide.  Upon mental status examination,
          there were no serious findings.  The claimant's intelligence,

25

26        [3] "Nystagmus" means "[a] rapid, involuntary oscillatory motion of the eyeball."
<u>Stedman's Dictionary</u> 568 (1995).

> including IQ scores, and concentration were noted to be in the low-average range.  The examiner suggested a learning disability, however, he [sic] also stated that the claimant's ability to perform the mental demands own [sic] work is intact.

(Tr. at 19.)

Plaintiff was 20 years old when Dr. Koulianos examined him.  (Tr. at 183.)  He indicated to her that he "has no cognitive disability of which he is aware."  (Id.)  With regard to other mental disabilities, he indicated that he was diagnosed at age 12 with attention deficit disorder (ADD), for which Wellbutrin was prescribed.  He took Wellbutrin off and on between ages 12 and 16 but was abusive with multiple illicit substances and alcohol during that period of time and eventually discontinued taking the psychotropic medication.  He stated that he had not sought or received treatment for ADD since age 16.  Plaintiff himself was primarily focused on his visual impairment, which he described as the reason he was not able to obtain or maintain employment.  Dr. Koulianos noted that plaintiff did not describe any significant disability related to depression or anxiety.  He was not taking any medication at the time of the examination.  (Id.)

Dr. Koulianos indicated that plaintiff had no history of inpatient psychiatric treatment.  However, he was under psychiatric care for ADD between ages 12 and 16, and he received counseling while in adolescent chemical dependency programs between ages 15 and 18.  By the age of 18, he had attained sobriety from alcohol and illicit substances, and has maintained sobriety since that time.  (Tr. at 183-84.)  Plaintiff reported that he was a student at American River College, where he had completed three semesters.  He earned a GPA of 3.2 for the most recent semester.  During the three semesters, he earned two C's, but all other grades were A's and B's.  (Tr. at 184.)

Dr. Koulianos performed a complete psychological evaluation, which included the administration of four tests.  (Tr. at 185, 188.)  She observed that plaintiff demonstrated adequate ability to hear, understand, and respond to interview questions and test instruction.  No significant limitations in completing test items were identified as related to his color blindness.

One task, a subtest within the Wechsler Adult Intelligence Scale - III test, was difficult for plaintiff to complete due to his vision impairment.  In completing that task, the doctor noted, plaintiff's face was inches from the paper.  Nonetheless, test scores were interpreted as valid and reliable.  (Tr. at 185.)

Dr. Koulianos found that plaintiff's full-scale IQ placed him at the low-average range of functioning, although there was a statistically significant discrepancy between his low-average to average Verbal IQ of 98 and his borderline to low-average Performance IQ of 70.  (Tr. at 186.)  Dr. Koulianos found plaintiff's low score of 3 on the Digit Symbol task most likely related to his visual impairment rather than to processing or tracking difficulties.  Plaintiff's overall attention/concentration abilities appeared to be in the low-average range, while his general fund of knowledge, social judgment, vocabulary, knowledge, and verbal abstract reasoning abilities were all within normal limits.  He obtained scores at the low-average to average range in the verbal areas for tests of memory, while scores in the borderline range in visual areas may have been related to his visual impairment.  He demonstrated excellent planning and organization abilities, committed no errors, and performed entirely within normal limits on the Bender-Gestalt test.  On the Wide Range Achievement Test - 3, his scores were at the borderline to impaired range for Spelling and Arithmetic and were at the borderline to low-average range for Reading.  Because the scores in these three areas were significantly below those that would be expected, given plaintiff's IQ outcomes, Dr. Koulianos concluded that plaintiff's scores suggested learning disabilities in those areas.  Dr. Koulianos rendered an Axis I diagnosis of (1) learning disability, not otherwise specified; (2) reported history of attention deficit hyperactivity disorder (ADHD); and (3) methamphetamine dependence, cannabis abuse, and alcohol dependence, all in sustained full remission.  With respect to plaintiff's mental residual functional capacity, Dr. Koulianos opined that he should be able to do the following without significant difficulty:  (1) execute simple and uncomplicated routine one or two step job instructions; (2) interact appropriately with peers, supervisors, and coworkers in a satisfactory

1  manner; (3) execute basic daily activity routines; and (4) manage adequately the transitions or

2  minor stressors associated with employment in most entry level job situations.  (Tr. at 186-87.)

3          The ALJ evaluated plaintiff's alleged mental impairment or impairments in

4  accordance with 20 C.F.R. § 416.920a.  First, he considered the impact of any mental

5  impairments on plaintiff in four broad functional areas:  (1) activities of daily living; (2) social

6  functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

7  20 C.F.R. § 416.920a(c)(3).  The ALJ found that plaintiff did not report difficulty in any

8  activities of daily living to any examiner and did not allege that a mental impairment caused an

9  impact on such activities.  The ALJ found no evidence of record showing that plaintiff was

10 restricted in his social functioning, noting that the examining psychologist described plaintiff as

11 cooperative, that no examiner noted any difficulty in this area, and that the record reflects that

12 plaintiff socializes and works.  The ALJ found that the record did not contain any objective

13 evidence of significant impairment in plaintiff's concentration, persistence, or pace and that no

14 examiner described any difficulty in this area.  The ALJ also found that no doctor has noted any

15 problem with plaintiff's memory or concentration and that plaintiff is independent in all of his

16 daily activities, handles his own finances, and cares for his girlfriend.  The ALJ found no

17 evidence of episodes of decompensation in a work or work-like setting.  The ALJ determined

18 that no mental impairment had an impact on plaintiff in any of the functional areas and there was

19 no evidence of a chronic organic mental disorder of at least two years duration that caused more

20 than minimal limitations.  (Tr. at 19.)  The ALJ then concluded that plaintiff does not have any

21 mental impairments that significantly limit his ability to perform basic work-related activities and

22 that therefore he does not have a severe mental impairment.  (Tr. at 20.)

23         The administrative record before this court contains only two medical records

24 related to plaintiff's mental impairments:  the psychological evaluation report prepared by Dr.

25 Koulianos in October 2004 (tr. at 183-88) and the Psychiatric Review Technique Form first

26 completed by a state agency physician in December 2004 and affirmed by a second state agency

1   physician in January 2005 for purposes of reconsideration (tr. at 189-202).  The state agency

2   physicians determined that plaintiff had no severe impairment in the category of organic mental

3   disorders, did not consider the category of mental retardation, and found no functional limitation

4   other than mild difficulties in maintaining concentration, persistence, or pace.  (Tr. at 189-90,

5   193, 199.)  The medical records pertaining to plaintiff's vision impairments shed no light on his

6   mental impairments.[4]  The ALJ did not address the effect of plaintiff's mental impairments

7   combined with his vision impairments.

8           Despite the scanty nature of the administrative record, the court finds evidence

9   that plaintiff has mental impairments that constitute more than slight abnormalities and have

10  more than a minimal effect on plaintiff's ability to work.  In reaching this conclusion, the

11  undersigned is mindful that the step-two inquiry is but "a de minimis screening device to dispose

12  of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also

13  Edlund, 253 F.3d at 1158.

14          Here, the examining psychologist's diagnosis includes learning disability not

15  otherwise specified and reported history of ADHD.  (Tr. at 186.)  The diagnosis of learning

16  disability resulted from plaintiff's scores on the Wide Range Achievement Test - 3, which placed

17  him at sixth grade level for reading and fourth grade level for spelling and arithmetic.  (Tr. at

18  186, 188.)  Dr. Koulianos noted that the test results in all three areas were significantly below the

19  results that would be expected, given plaintiff's verbal IQ of 98 and full scale IQ of 85, and she

20  opined that these scores suggested learning disabilities.  (Tr. at 186.)  Dr. Koulianos also noted

21  the statistically significant discrepancy between plaintiff's verbal IQ of 98, which falls in the

22

23          [4]  The records pertaining to plaintiff's vision impairments consist of a visual assessment
    report dated June 20, 1994, from Pia Hoenig, O.D., M.A. (tr. at 166-68); a medical report dated
24  August 18, 2004, from consulting examiner James M. Reece, Jr., M.D. (tr. at 169-74); a Residual
    Functional Capacity Assessment - Physical, dated August 24, 2004, completed by a state agency
25  physician (tr. at 175-82); treatment records for the period from January 31, 2002 to May 10,
    2005, from the University of California Berkeley (tr. at 203-15); and state agency summaries (tr.
26  at 154-65).

1   low-average to average range, and his performance IQ of 70, which falls in the borderline to low-

2   average range.  (Tr. at 186, 188.)

3           Dr. Koulianos did not diagnose mental retardation.  However, the American

4   Psychiatric Association defines "[s]ignificantly subaverage intellectual functioning" as "an IQ of

5   about 70 or below," and mild mental retardation is usually reflected by "IQ level 50-55 to

6   approximately 70."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

7   Disorders (DSM IV) 39-40 (4th ed. 1994).  The Commissioner's own regulations provide that

8   "[a] valid verbal, performance, or full scale IQ of 60 through 70" meets the listed impairment for

9   mental retardation if the claimant meets the additional requirements specified in Listing 12.05.

10  See 20 C.F.R. Pt. 404, Subpt. P., App. 1 Listing 12.05.  Based upon the record before this court,

11  it appears that plaintiff may even meet the listing.

12          In any event, it is evident from the examining psychologist's report that she was

13  of the opinion that plaintiff's mental impairments did, in fact, affect his ability to work.  For

14  example, in her medical source statement, Dr. Koulianos indicated that plaintiff could, "without

15  significant difficulty," execute "simple and uncomplicated routine one or two-step job

16  instructions" and "basic daily activity routines" and could, "without significant difficulty,"

17  manage "transitions or the minor stressors associated with employment . . . adequately for most

18  entry level job situations."  (Tr. at 186-87.)  These limitations incorporated into Dr. Koulianos'

19  medical source statement demonstrate that plaintiff's mental impairments have more than a

20  minimal effect on his ability to work.  Based on this record, the court cannot find that plaintiff's

21  mental impairments are "not severe" because the evidence does not establish that those

22  impairments are merely slight abnormalities having no more than a minimal effect on his ability

23  to work.  Certainly, this is not an instance in which a finding of no impairment at step two of the

24  sequential evaluation process was justified by a total absence of objective evidence of a the

25  severe impairment or where even a claimant's own doctor was hesitant to conclude that the

26  condition in question was legitimate.  See Webb, 433 F.3d at 688.  The ALJ's determination with

1  respect to plaintiff's mental impairments is therefore not supported by substantial evidence in the

2  record as a whole and must be reversed.

3           "[A]djudication must continue through the sequential evaluation process."  SSR

4  85-28, 1985 WL 56856, at *3.  Remand is required so that the ALJ can proceed beyond step two

5  of the sequential evaluation process with respect to plaintiff's severe mental impairments.  See

6  Webb, 433 F.3d at 688 (remanding for further proceedings where "[t]he ALJ should have

7  continued the sequential analysis beyond step two because there was not substantial evidence to

8  show that Webb's claim was 'groundless'").[5]

9                                  **CONCLUSION**

10          In light of the remand required by the ALJ's error at step two, the court need not

11 address plaintiff's remaining arguments.  See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10

12 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in

13 ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's

14 credibility.").  Moreover, the record is not sufficiently developed for consideration of those

15 arguments at the present time.  Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994)

16 ("Generally, we direct the award of benefits in cases where no useful purpose would be served by

17 further administrative proceedings, or where the record has been thoroughly developed.").

18          On remand, the ALJ shall develop the record with respect to plaintiff's mental

19 impairments and the functional limitations arising from plaintiff's vision impairments.  The

20 effect of plaintiff's mental impairments shall be considered in conjunction with his vision

21 impairments.  It will, of course, be necessary to consider whether plaintiff's impairments meet

22 the requirements of Listing 12.05 or any other relevant listed impairment.  If plaintiff's

23

24          [5] Of course, the court expresses no opinion as to whether plaintiff will ultimately succeed
    in establishing that he is entitled to disability insurance benefits.  Rather, the court holds only that

25  the sequential evaluation in this case should have proceeded beyond step two in light of the
    record with respect to his mental impairment.  See Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir.

26  2005).

1  impairments do not meet or equal any listing, the ALJ shall reconsider plaintiff's subjective

2  testimony and re-determine plaintiff's residual functional capacity in light of all of his

3  impairments and the entire record.  If the sequential evaluation proceeds to step five, the ALJ

4  shall hold a hearing at which plaintiff testifies and hypothetical questions are presented to the

5  vocational expert in a manner that properly takes into account all of his limitations on plaintiff's

6  ability to engage in work-related functions.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09

7  (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the

8  claimant suffered from a severe mental impairment).

9          Accordingly, IT IS HEREBY ORDERED that:

10          1.  Plaintiff's May 8, 2008 motion for summary judgment (Doc. No. 20) is

11  granted;

12          2.  Defendant's June 25, 2008 cross-motion for summary judgment (Doc. No. 24)

13  is denied;

14          3.  The decision of the Commissioner of Social Security is reversed; and

15          4.  This case is remanded for further proceedings consistent with this order.

16  DATED: August 28, 2009.

17

18                                                     _____

19                                                     DALE A. DROZD
                                                       UNITED STATES MAGISTRATE JUDGE

20  DAD:kw
    Ddad1/orders.socsec/middlebrook1663.order

21

22

23

24

25

26